All right, we'll go on to case number five, appeal number 22-2032, Dr. Quintella Bounds v. Country Club Hills School District 160. Hello, Mr. Davis. Good morning, Your Honor. May it get good morning, judges. May it please the court. My name is Jerome Davis. I represent the plaintiff, Appellant Dr. Quintella Bounds. We believe the district court committed reversible error with regard to Dr. Bounds' due process claim because it failed to consider whether state law, specifically Section 23.88 of the Illinois School Code, was a predicate for her due process claim. Mr. Davis, can I just confirm with you, please, what precisely you're basing your client's property interest on? Because I think you agree, in order to have a due process claim, you have to have a protected property interest. Yes. Are you basing it on the February 20th evaluation? Are you basing it on the board vote? Are you basing it on what you've just cited, 23.88 of the code? I was a little unclear from the briefing what your precise position was. My precise position, judge, is that it has two sources. One is the March 24, 2020 vote, which we say was pursuant to Section 23.88, and by that statute vested my client with a contract. It was an oil contract. We presented evidence that an oil contract was negotiated in February of 2020, which was ratified by that vote. The second source is the mutual understanding between the parties based on the past practices and the communications to my client, similar to in Higginbotham, where my client was told that the only thing that was required to renew her employment was a vote by a board majority. So, again, we believe the March 24 vote was consistent with her reasonable, legitimate expectation, which made her believe that she had an entitlement to continued employment. As I understand it, the board postponed the votes on the administrators from March 17th to March 24th so that the written contracts could be revised. Don't we have to ignore that context in order to accept Dr. Bowne's assertion that what the board approved on March 24th was her continued employment generally, rather than the written contract that was subsequently mailed to her? Judge, we actually don't know what the board did on March 17th because the board didn't do as it was required by law to make a verbatim recording of that meeting. We know that defendants are now saying that that vote was postponed because they wanted to consider a written contract, but our position is that there's a fact issue that my client had a negotiation with the superintendent in February. They came to terms and that she was told on March 24th they would vote. My client also... I'm sorry. I'm going to stop you there because if Superintendent Scott only had the authority to recommend that Dr. Bowne's employment be renewed, how could Superintendent Scott and Dr. Bowne reach any sort of enforceable understanding as to the terms of her employment? In other words, wouldn't the board have to know what terms Superintendent Scott had offered to Dr. Bowne and moreover, approve those terms? Precisely, Judge, and that's what my client testified to is that what the superintendent told her was coming from the board. The board made promises that she would have a contract renewed on the terms of the prior year contract and the superintendent was relaying that. We also presented evidence that the superintendent... She didn't have the authority. She had the authority to recommend that, but she did not have the authority to approve that. Only the board, it would seem, had that authority. That's the problem. We presented evidence, Judge, that in this district, the superintendent negotiated the client's original contract in 2019. This case is on point with Vail. The superintendent was relaying to my client the promises that were made by the board. We also presented evidence that there was a collaborative process. It wasn't a process where a superintendent came to an evaluation and said, well, I'm going to make a recommendation. If you're going to talk to somebody about whether you want them to come back the next year, you got to be able to come in and tell them what the terms are going to be of their employment. How much are they going to get paid? Are they going to have the same vacation? We gave evidence that before the superintendent met with my client in February, she met with the board, that that was their practice, and that the board told her then, these are the terms that we're going to offer. And that's what she relayed to my client in February. And then my client resisted at first. She wanted a raise. She thought she was entitled to it. But the superintendent assured her, we're not going to give raises, but everything else will be the same. That was an assurance from the board. My client then said she accepted that, and she was told, based on the past practice, that the March 24 vote would be a ratification of that agreement. So we also believe the court erred, Judge, because with regard to the issue of mutual understanding. And even, let me back up even before I go there. This court said in Shelley, when you're going to talk about whether there's a cognizable interest, you've got to start with the statute, with state law. And here, the judge ignored the statute that governs employment of administrators. He only talked about it in a footnote in passing, and he talked about it, and he said, without deciding it. So we think that's a reversible error in and of itself. The court couldn't possibly rule defendants were entitled to judgment as a matter of law without considering the governing statute. And you're referring to 23.8A when you say the statute, correct? Yes. And what is it in the language of that statute that you think suggests that a board vote is all that is needed to renew an administrator's contract? The statute says that the board may only hire an administrator under a contract for one year or a performance-based contract for up to five years. This court has ruled that any time a entity gives a contract for a fixed duration, that gives rise to a protectable property interest. But the contract that was entered had expired. Right. But the new contract, they voted on a new contract. But that's what, I don't understand, where is it in this section that says that the vote alone would give that property interest? Because it says the only way you can hire an administrator is pursuant to a contract. Right. And there's no contract if both sides haven't signed it here. Well, there was an oral contract that the parties agreed to. And as the district court acknowledged, the statute permits oral contracts for up to one year. So there was an oral contract negotiated in February, and that's what the board voted on. So if the board came in March 24th, and said, we hire, or we're renewing Dr. Quintella Browns by virtue of the statute, they just hired her. They were required. They can only hire her for a contract, under a contract. And that meant she went from being an at-will employee to an employee with a contract. That gave her a cognizable interest. So the vote itself, which was supposed to, based on what she was told, ratify what she was promised in February, gave her a contract. Moreover, we presented evidence, like in Higginbotham and Sinderman. And the court, in this case, treated that evidence, said that it strained credulity, said that it was implausible that my client could believe, based on the past practices, that she had an entitlement. As you read the court's opinion, it doesn't read like summary judgment. It reads like a trial. And this court's well-established precedent is that summary judgment is not a trial. Weighing evidence, making credibility determinations is left for the jury. And we believe that the court erred, because it did not do so in this case. And unless there are other questions, I'd like to all of your time, actually. OK. But I will give you a few minutes. I will give you a few minutes. If the court has any further questions, I'll answer them. Thank you. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court, my name is Jennifer Schwandt-Denner, and I represent the defendants. Briefly, I'd like to touch upon a comment that counsel made with respect to Section 10-23.8a of the Illinois School Code. Nowhere in that statute does it give any, administrator, substantive due process rights. What it simply says is that the district may only employ school administrators under a contract for a period not to exceed one year, or a performance based contract for a period not to exceed five years. Nowhere in that statute does it give plaintiff any due process rights. This case is analogous with Lysnicki v. Board of Education of 167. In Lysnicki, the plaintiff was a principal and employed under a yearly contract, which expired in June of 1980. The Defendant Board of Education voted in February that year to renew Mr. Lysnicki's contract for the following school year. Importantly, the plaintiff never signed that offer, or never signed that contract. In June, the board changed its vote and directed the plaintiff's contract not be renewed for the following school year. The plaintiff was not court's granting of summary judgment in favor of the defendants, and ruled that plaintiffs did not have a right to continued employment as a principal under state law. The court held that plaintiff could not be such a right on a contract. He only had a yearly contract, and it was not terminated at the end of that contract. The court noted that had plaintiff signed the contract with the board for that following school year, and had the board broken that contract, plaintiff would be able to All we have was an offer and never any acceptance. Here we have a remarkably similar fact pattern. The record evidence unequivocally establishes that the board vote on March 24, 2020, was to extend an offer of employment to plaintiff and five other administrators for the following school year. All administrators, including the plaintiff, were notified that evening by Dr. Scott, the district superintendent, that their contracts would be forthcoming the following day, and they had to sign and return by March 31st. Dr. Scott did email the contracts the following day, again with directions to sign and return by March 31st. It is undisputed that plaintiff never signed that contract. She never returned that contract. Do we know whether the board was made aware that Dr. Bounds was ill during the week, that she had to review and sign the contract? The board was not, there's testimony in the record to establish that the board members were not aware that plaintiff was sick, but the record evidence does establish that Dr. Scott was aware that plaintiff was out at that time. Regardless of whether plaintiff was sick or not, she was still communicating with Dr. Scott and the board. She did receive the email, but she did respond to that email which directed her to sign and return the contract by March 31st. And plaintiff did testify that she did receive the contract and did receive that email. So it is undisputed that she was aware that she had to sign and return the contract by March 31st. Turning to an issue that plaintiff relies upon is whether Dr. Scott made an oral promise to plaintiff and whether there was an oral offer of employment during plaintiff's performance evaluation on Dr. Scott did not have authority to bind the board under Illinois law section 10-21.4 of the school code in the board's own policy section 3 colon 50. The superintendent and most can make recommendations to the board, but the superintendent does not have authority to bind the board. We cited two cases in our brief that hold that a superintendent is under the direction of the board and has no salaries. Coleman versus St. Louis and Wolfe versus city of Fitchburg. Wolfe held that a mutually explicit understanding which constitutes a property interest cannot be based on the representation of government officials who are not authorized to make such representations. Here it was clear that Dr. Scott's authority was limited by the Illinois school code and the board's actions clearly expressed its intent to offer terms that differed from plaintiff's prior 2019-2020 contract. The testimony of Dr. Scott, board member Sharon Mack, and board president Jacqueline Doss and even plaintiff's own testimony confirms that Dr. Scott told plaintiffs she would be renewed for the following year. This is further consistent with all actions taken by the board during the March board meetings in which they considered which administrators, which contracts they wanted to renew. They intentionally made changes to those to find the vacation time and they voted to improve employment agreements for plaintiff and the five other administrators. The employment agreements differed from the prior years. That was an intentional change that the board made and voted on that evening on March 24th. The board then directed Dr. Scott to email the contracts to plaintiff and the other administrators with explicit directions to sign and return by March 31st. Plaintiff even concedes that this process the superintendent recommending making recommendations to the board on page 19 of her appellant brief when she discusses the circumstances of her hiring with Dr. Goodsell. In her brief she cites that plaintiff negotiated her contract terms with Dr. Goodsell and that Dr. Goodsell said that he would recommend that the board approve her contract. Plaintiff further states in her brief that this process was repeated again for the 2020 school year when plaintiff allegedly negotiated the contract with Dr. Scott and made a recommendation to the board. Even if we adopt plaintiff's testimony regarding that February 28th, 2020 meeting, there is no evidence that Dr. Scott was directed by the board to make any offer of employment to plaintiff. Plaintiff did not testify that she accepted any such offer or took any actions in reliance upon an offer that Dr. Scott had allegedly made. Plaintiff cites and relies heavily on Vail versus Board of Education, which is very distinguishable for the facts in this case. Vail, there was clear testimony that the board expressed a clear desire to hire plaintiff for two years and the board further instructed the plaintiff to take action and to notify the plaintiff of their expectations that plaintiff would be hired for two years. Plaintiff relied on that, quit his job, moved his family, and took a salary cut in reliance on that offer of a two-year employment. Here there's no evidence that the board directed Dr. Scott to make any offer to plaintiff. To the extent that Dr. Scott suggested as much, she certainly did not do so at the direction of the board. The board unequivocally offered a revised contract, which demonstrates its intent to modify the terms of her contract for the 2020-2021 school year. Dr. Browns has submitted evidence that there are other employees who were able to work without a written agreement in place. What impact does that have on your argument? The past, any alleged past practices of the board are relevant here because it does not establish a mutual explicit understanding that supports a claim for entitlement. Plaintiff had, at most it would establish that plaintiff had unilateral belief that her employment was secure. The plaintiff cannot establish that the similar belief. Any purported past practices again are undermined by the fact that the board took specific action to offer plaintiff an employment contract with specific terms for the 2020-2021 school year. That contract, the board directed Dr. Scott to convey that offer to plaintiff with instructions to return and sign by March 31st, which plaintiff did not do. The last point I wanted to briefly make was that even if plaintiff can establish, even if plaintiff has established or can infer that Dr. Scott had authority to offer her or that the board somehow ratified a one-year promise made by Dr. Scott, it still does not give her a protected right of property interest and continued employment. Plaintiff's 2019-2020 contract was at will. Paragraph six of the contract explicitly states that either side could terminate without cause and that she was an at will employee. As held in Kerr versus South Cook Intermediate Service Center, a contract for employment not to exceed a certain period of time, which we had in her contract, suggests an indefinite period of employment, which under Illinois is considered at will. In Cromwell versus City of Moments, the Seventh Circuit hurled that at will employment cannot form the basis of a legitimate expectation of continued employment under Illinois law. So even if plaintiff could establish that the terms of her contract were renewed, she cannot establish that she had protected property interest and continued employment. Based on those reasons, we respectfully request that Your Honors affirm the district court's granting summary judgment. Thank you very much, Ms. Schwindener. And as I said, you had used all your time, but Mr. Davis, we'll give you three minutes. Thank you very much, Your Honor. Council's argument sounds like a closing argument in a trial. I remind the court that this court, just as the district court, is bound by the rules of summary judgment. And in those rules, all inferences drawn from the evidence must be drawn in favor of the non-movement. And the summary judgment proceeding is not a trial. I don't see how you can reconcile what the district court did in this case, where the issue unveiled was whether that promise for a second year to renew the contract, which was conveyed to the plaintiff through the court, had to be resolved at a bench trial. I don't see how you can resolve that with the district court, which, by the way, in this court case, identified at the outset in the motion to dismiss that there were two factual issues. One was the March 24, 2020 vote, a vote to hire plaintiff pursuant to the statute. And the second was whether or not there was a practice in the district that the only requirement to renew employment was a board majority vote. The court identified those as factual issues. However, then at summary judgment, it proceeded to resolve those issues. That's totally antithetical to the statute. And counsel keeps saying there's no evidence that the promise was made. This case is distinguishable from Coleman. In Coleman, there was no evidence of my client has said that the superintendent told her, the board said, we're going to renew you on the same terms as the previous year. That's a swearing contest. Swearing contest is this court ruled in Ziccarelli don't get resolved by this court or the trial court under summary judgment. That's a factual dispute. And as far as the statute itself, not given a positive right, the statute says the only way you can hire somebody is by a contract. And the only way the board can take action is via a vote. So if the board has a vote that says I hire Jerome Davis, then by the statute itself, that created a contract. This court's authority says once that happens, a cognizable due process claim arises. And so we think this case is clear. There's clear factual disputes that abound. With regard to the evidence, counsel's saying it's no evidence. We had two employees who gave evidence, the same evidence like at Higginbotham, that they were told, don't worry. A board vote is all you need, and you're hired. And the district court said that was anecdotal evidence. The district court entered into determining the reversible error, and I thank the court for the additional time. You're very welcome, and thank you, Mr. Davis, very much. And thanks to Ms. Schwindener again.